1  Kevin R. Sutherland (State Bar No. 163746)
   Christian T. Johnson (State Bar No. 288198)
2  CLYDE & CO US LLP
   101 Second Street, 24th Floor
3  San Francisco, California 94105
   Telephone:  (415) 365-9800
4  Facsimile:   (415) 365-9801
   Email:  kevin.sutherland@clydeco.us
5          christian.johnson@clydeco.us

6  Attorneys for Defendant
   SERCO INC.
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 | SILVIA C. FARELAS; DAVID           ) Case No.:  2:19-cv-00574
   | FARELAS; SILVIA FARELAS, as        )
11 | Successor in Interest to the ESTATE ) NOTICE OF REMOVAL OF SERCO
   | OF ADINE ELAINE FARELAS,           ) INC. TO UNITED STATES
12 |                                    ) DISTRICT COURT
   |            Plaintiffs,             )
13 |                                    ) Trial Date: None
   |      v.                            ) Complaint Filed: February 15, 2018
14 |                                    )
   | ESTATE OF NOURI D. HIJAZI;         )
15 | MARK SCHECK, as Personal           )
   | Representative of the ESTATE OF    )
16 | NOURI HIJAZI; LORI SCHECK, as      )
   | Personal Representative            )
17 | of the ESTATE OF NOURI HIJAZI;     )
   | RICHARD PIERCE, as Personal        )
18 | Representative of the HIJAZI LIVING )
   | TRUST;  SERCO INC.; SERCO          )
19 | GROUP, PLC; TEXTRON INC., dba      )
   | TEXTRON AVIATION; RAS              )
20 | JETPORT; and DOES 1-85, inclusive, )
   |                                    )
21 |            Defendants.             )
   |                                    )
22 |_____)

23    TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR
24 ATTORNEYS OF RECORD HEREIN:
25    PLEASE TAKE NOTICE that Defendant Serco Inc. (hereinafter "Serco"),
26 by and through its attorneys, Clyde & Co US LLP, hereby removes this pending
27 action from the Superior Court of the State of California for the County of
28 Riverside to the United States District Court for the Central District of California

4638537
NOTICE OF REMOVAL OF SERCO INC.

pursuant to 28 U.S.C. Sections 1442(a)(1) and 1446, as follows.

## INTRODUCTION

1. This litigation arises from an aircraft accident which occurred on February 27, 2017 near the Riverside Municipal Airport (hereinafter "RAL"). The pilot of the aircraft and three of the four passengers on board the aircraft died as a result of the incident. Serco is responsible for air traffic control operations at RAL and, at all material times, Serco controllers carried out their duties in strict compliance with comprehensive federal rules and requirements and subject to the direction, oversight and control of the Federal Aviation Administration (hereinafter "the FAA"). In addition, Serco has colorable federal defenses to plaintiffs' causes of action based on federal preemption and derivative sovereign immunity. Accordingly, and as further demonstrated below, removal of this case to this Court is proper under the Federal Officer Removal Statute, 28 U.S.C. Section 1442(a)(1).

## BACKGROUND

*A.   Procedural Background*

2. On February 15, 2018, plaintiffs filed in the Superior Court of California for the County of Los Angeles their summons and complaint, bearing Case No. BC694074 (hereinafter "the State Action"). *See* Declaration of Kevin R. Sutherland filed concurrently herewith (hereinafter "Sutherland Decl."), ¶ 3, Exhibit A.

3. On April 5, 2018, plaintiffs filed in the State Action their summons and first amended complaint (hereinafter "the Complaint"). *See* Sutherland Decl., ¶ 4, Exhibit B.

4. On September 28, 2018, the State Action was transferred to the Superior Court of the State of California for the County of Riverside, and the case number originally assigned to the State Action was changed to RIC1822857. *See* Sutherland Decl., ¶ 5, Exhibit C.

5. On December 28, 2018, plaintiffs served Serco's registered agent with

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

the summons and Complaint. *See* Sutherland Decl., ¶ 6, Exhibit D.

**B.     *Accident Sequence and Plaintiffs' Allegations Against Serco***

6.     The RAL control tower (hereinafter "the Tower") is an FAA nonapproach federal contract tower which is operated by Serco pursuant to a contract with the FAA (hereinafter "the Contract"). *See* Declaration of David J. McCann filed concurrently herewith (hereinafter "McCann Decl."), ¶ 5, Exhibit A.

7.     Prior to the accident on the date of the incident, former Serco air traffic controller, Darrell Bloomer (hereinafter "Bloomer"), provided the pilot of the accident aircraft, Nouri Hijazi (hereinafter "the Pilot"), with taxi instructions and, once the aircraft reached the runway, Bloomer cleared the aircraft to takeoff from RAL. *See* Complaint, at ¶¶ 24-27. The Complaint alleges that Bloomer repeated his taxi instructions and departure clearance multiple times before the pilot repeated the instructions and clearance correctly. *See* Complaint, at ¶¶ 25-27.

8.     While the Complaint does not identify a duty which Bloomer and/or Serco breached during the incident, it appears that plaintiffs are alleging that Serco is liable for the accident because Bloomer cleared the Pilot to take off despite the Pilot being allegedly "confused and disorientated." *See* Complaint, at ¶¶ 25, 27.

**C.     *Consent and Timing of Removal***

9.     Pursuant to 28 U.S.C. Section 1446(b), the deadline to remove a state court action to federal court is within thirty days after the receipt by the defendant of a complaint that provides a basis to remove or, if the complaint does not provide such a basis, thirty days from receiving a pleading or paper that does so provide.

10.     The Complaint provided Serco with a basis to remove the State Action to this Court. January 27, 2019 is thirty days after the date Serco was served with the summons and Complaint. Since this Notice of Removal was filed prior to January 27, 2019, this removal is timely under 28 U.S.C. Section 1446(b).

11.     The Federal Officer Removal Statute, 28 U.S.C. Section 1442(a)(1), authorizes a defendant to remove a state action to federal court without obtaining

the consent of any other defendant named in the litigation. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). Accordingly, no other party is required to consent to this removal.

## ARGUMENT

## I

## THIS ACTION IS PROPERLY REMOVED TO THIS COURT PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE

12. The Federal Officer Removal Statute authorizes removal of a civil action brought against any person "acting under" an officer of the United States "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Unlike removal under Section 1441, Section 1442(a)(1) is "liberally construed" in favor of removal. *Durham*, 445 F.3d at 1252. Therefore, the strong policy favoring removal under Section 1442(a)(1) "should not be frustrated by a narrow, grudging interpretation." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

13. The right to remove under Section 1442(a)(1) is "absolute" provided the following elements are satisfied: (1) the removing defendant is a "person" within meaning of the statute; (2) the defendant "acted under" an officer of the United States; and (3) the defendant has at least one "colorable" defense to the plaintiff's claims. *See, e.g., Mesa v. California*, 489 U.S. 121, 124-25 (1989).

14. As demonstrated below, each of these elements are satisfied. As such, removal of the State Action to this Court is proper pursuant to Section 1442(a)(1).

### A. Serco is a "Person" Within the Meaning of Section 1442(a)(1)

15. A private corporation is a "person" entitled to invoke the Federal Officer Removal Statute. *See, e.g., Yocum v. CBS Corp.*, No. 17-cv-01061-SJO, 2017 WL 8231363, at *4 (C.D. Cal. May 1, 2017). Accordingly, because Serco is a private corporation, it is a "person" within the meaning of Section 1442(a)(1).

### B. Serco "Acted Under" the Direction of a Federal Officer

16. For a private entity to be "acting under" a federal officer, it must be

involved in "an effort to assist, or to help carry out, the duties of the federal superior." *Watson v. Philip Morris Companies, Inc*., 551 U.S. 142, 143 (2007). A critical inquiry in this analysis is whether the defendant "performed a job that, in the absence of a contract with a private firm, the Government would have had to perform." *Watson*, 551 U.S. at 154.

17. A defendant must also show that its conduct taken under federal direction was "causally connected" to the plaintiff's claims. *See, e.g., Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244–45 (9th Cir. 2017). The Ninth Circuit has held that "the hurdle erected by the causal-connection requirement is quite low." *Goncalves*, 865 F.3d at 1244. Further, to satisfy this requirement, defendants "need show only that the challenged acts occurred because of what they were asked to do by the Government." *Goncalves*, 865 F.3d at 1245. In assessing whether a causal nexus exists, courts must credit the defendant's theory of the case. *See Leite v. Crane Co*., 749 F.3d 1117, 1124 (9th Cir. 2014).

18. For instance, in *Badilla v. Nat'l Air Cargo, Inc*., plaintiffs commenced an action in state court arising from the crash of an aircraft near the Kabul Afghanistan International Airport (hereinafter "KAIA"). No. 12-cv-1066 (MOD), 2014 WL 6390324 (W.D.N.Y. Nov. 17, 2014). Plaintiffs brought suit against, *inter alia*, a private entity (hereinafter "Midwest") that provided air traffic control services at KAIA pursuant to a contract with a prime contractor, which had contracted with the United States military. *Badilla*, 2014 WL 6390324, at *1. Defendants removed the case to federal court based, in part, on Section 1442(a)(1), and plaintiffs then filed a motion to remand. *Badilla*, 2014 WL 6390324, at *1.

19. The Court observed that a United States military officer regularly supervised Midwest controllers, who were trained by the military, and that military personnel drafted a document describing the controllers' tasks and responsibilities. *Badilla*, 2014 WL 6390324, at *3-4. The court held that Midwest had satisfied the first element of the Section 1442(a) standard because Midwest's "control tower

1 services assisted the United States in achieving its objectives" and the plaintiffs'
2 claims were sufficiently related to those services. *Badilla*, 2014 WL 6390324, at
3 *7; *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1083 (6th Cir. 2010) (holding
4 that Section 1442(a)(1) was satisfied because an FAA mold remediation contractor
5 "helped FAA officers carry out their task of ridding a federal employee occupied
6 building of an allegedly hazardous contaminant – a job that, in the absence of a
7 federal contract with the contractor, the FAA itself would have had to perform").

8     20.    Here, the FAA exercises significant oversight and control over Serco's
9 air traffic control operations at RAL. For instance, the Contract requires Serco to
10 implement facility training and quality assurance programs at the Tower, which
11 must be in strict compliance with all FAA requirements and are subject to
12 evaluation by the FAA. *See* McCann Decl., ¶¶ 5-7, Exhibit A, pp. C-3-C-4. Serco
13 air traffic controllers must be trained pursuant to FAA requirements, and Serco is
14 required to maintain certain FAA-mandated training records for review by the
15 FAA. *See* McCann Decl., ¶¶ 5, 6, Exhibit A, pp. C-3-C-4.

16    21.    The Contract further provides that Serco must submit to the FAA
17 monthly, quarterly and annual reports pertaining to its adherence to FAA rules.
18 *See* McCann Decl., ¶¶ 5, 7, Exhibit A, p. C-5-C-6. The Contract provides the FAA
19 the right to approve changes to Serco's internal operating documents. *See* McCann
20 Decl., ¶¶ 5, 8, Exhibit A, p. C-10. The Contract also authorizes the FAA to
21 conduct inspections and audits of Serco's operations. *See* McCann Decl., ¶¶ 5, 8,
22 Exhibit A, p. C-11, E-1.

23    22.    The Contract states that Serco must comply with all FAA orders
24 identified in the Contract. *See* McCann Decl., ¶¶ 5, 9 Exhibit A, at p. C-1, Part III,
25 Section J. For instance, Serco must comply with extensive and detailed
26 administrative and operational requirements included in the FAA's Facility
27 Operations and Administration Order (FAA JO 7210.3Z). *See* McCann Decl., ¶
28 10, Exhibit B. In addition, under the FAA's Air Traffic Organization Quality

1 Control Order (FAA JO 7210.634), Serco must regularly conduct internal reviews
2 and annual compliance verifications, which must be provided to the FAA. *See*
3 McCann Decl., ¶ 11, Exhibit C, at pp. 8-17; ¶ 12, Exhibit D. Pursuant to the FAA's
4 Air Traffic Organization Audit and Assessment Program Order (FAA JO 7010.14),
5 the FAA is entitled to conduct audits of Serco's operations, with or without prior
6 notice. *See* McCann Decl., ¶ 13, Exhibit E, at p. 2. Serco controllers are required
7 to comply with the comprehensive rules and requirements included in the ATC
8 Manual when carrying out their duties. *See* McCann Decl., ¶ 14, Exhibit F.

9      23. The direction, control and oversight exercised by the FAA over
10 Serco's air traffic control operations is much more significant and extensive than
11 that which the military exercised over Midwest in *Badilla*. *See* 2014 WL 6390324,
12 at *3-7. In addition, by operating the Tower, Serco is assisting and helping to
13 carry out the duties and tasks of the FAA. *See Watson*, 551 U.S. at 143. Further,
14 just as in *Bennett*, if the FAA elected not to enter into a contract with a private
15 entity to operate the Tower, it would be required to operate the Tower itself. 607
16 F.3d at 1083; *see also Watson*, 551 U.S. at 152. Thus, it cannot be reasonably
17 disputed that Serco was "acting under" the FAA within the meaning of Section
18 1442(a)(1).

19      24. As noted above, plaintiffs appear to allege that it was negligent for
20 Bloomer to issue a takeoff clearance when the Pilot was allegedly confused and
21 disoriented. *See* Complaint, at ¶¶ 25, 27. However, as discussed below, Bloomer
22 complied with all ATC Manual requirements when clearing the Pilot to takeoff.
23 *See* McCann Decl., ¶ 13. Bloomer was required to follow the ATC Manual
24 requirements under federal law. *See* 14 C.F.R. § 65.45. Thus, there is a causal
25 nexus between plaintiffs' claims and acts Bloomer took pursuant to federal law.

26 **C.    Serco Has Colorable Federal Defenses to Plaintiffs' Claims**

27      25. For a federal defense to be deemed colorable under Section
28 1442(a)(1), it is not necessary for the defense to be meritorious. *See Leite*, 749

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1  F.3d at 1123. Instead, a defendant must show "merely that there is a legitimate
2  question of federal law to be decided regarding the validity of the defense."
3  *Yocum*, 2017 WL 8231363, at *4. When considering whether a defense is
4  colorable, courts must view the facts in a light most favorable to the defendant.
5  *See, e.g., Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1038 (D. Haw. 2012).

6      *i.  Serco Has a Colorable Derivative Sovereign Immunity Defense*

7      26. In *Yearsley v. W.A. Ross Constr. Co.*, the Supreme Court held that a
8  government contractor is immune from liability if: (1) the government "authorized"
9  the contractor's actions; and (2) the government "validly conferred" that
10  authorization, meaning it acted within its constitutional power. 309 U.S. 18, 20-
11  21. Conversely, derivative sovereign immunity may not be invoked "[w]hen a
12  contractor violates both federal law and the Government's explicit instructions."
13  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016). The Ninth Circuit has
14  held that derivative sovereign immunity under *Yearsley* is limited to cases in which
15  contractors had no discretion to deviate from federal requirements and completely
16  followed government specifications. *See Cabalce v. Thomas E. Blanchard &*
17  *Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015).

18      27. Here, with respect to the first element, Serco was authorized to
19  operate the Tower pursuant to the Contract. *See* McCann Decl., ¶ 5. In addition,
20  during the incident, Bloomer was required under the ATC Manual to issue a
21  takeoff clearance to the Pilot. *See* McCann Decl., ¶ 16. The ATC Manual states
22  that air traffic controllers must ensure there is adequate spacing between aircraft on
23  runways. *See* McCann Decl., ¶ 14, Exhibit F, Sections 3-8-1, 3-9-6. When
24  deciding whether to issue a takeoff clearance, Bloomer was only required to focus
25  on known traffic and physical airport conditions. *See* McCann Decl., ¶¶ 14,
26  Exhibit F, Glossary.

27      28. Under Section 3-9-5 of the ATC Manual, controllers are not required
28  to withhold a takeoff clearance when there is reasonable assurance that prescribed

4638537                              -8-
NOTICE OF REMOVAL OF SERCO INC.

separation exists between the subject aircraft and other aircraft and/or objects located on a runway. *See* McCann Decl., ¶¶ 14, Exhibit F, Section 3-9-5. When Bloomer issued the takeoff clearance, there were no other aircraft or objects located on the runway, aside from the accident aircraft. *See* McCann Decl., ¶ 16. Thus, his decision to issue a takeoff clearance complied applicable ATC Manual provisions, which he was required to follow under federal law. *See* 14 C.F.R. § 65.45. Therefore, the FAA authorized Bloomer's to issue the takeoff clearance.

29. As noted above, plaintiffs argue that it was negligent for Bloomer to issue the takeoff clearance when the Pilot was confused and disoriented. *See* Complaint, at ¶¶ 25, 27. However, Bloomer was not required, authorized, or otherwise given the discretion under the ATC Manual to withhold the takeoff clearance based on his subjective determination regarding the Pilot's competence and/or physical or mental condition. *See* McCann Decl., ¶ 16. Further, Bloomer was not qualified to make this determination, as he is not a physician and could not observe the Pilot. *See* McCann Decl., ¶ 16. Accordingly, Bloomer was not negligent during the incident and he did not have the discretion to deviate from the ATC Manual requirements.

30. As to the second element, Congress has authorized the FAA to enter into contracts with private companies to operate federal contract towers pursuant to the federal contract tower program (hereinafter "the Program"). *See* 49 U.S.C. § 47124. The Contract was entered into between Serco and the FAA pursuant to the Program. *See* McCann Decl., ¶ 5. As such, the FAA "validly conferred" the authorization described above pursuant to federal law. *See* 49 U.S.C. § 47124. Accordingly, Serco has a colorable federal derivative sovereign immunity defense.

### ii. Serco Has A Colorable Federal Preemption Defense

31. Congress has the power to preempt state law, which it may do either expressly or impliedly. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). There are two types of implied preemption: conflict preemption and field

1 preemption. *Cipollone*, 505 U.S. at 516. Courts may find conflict preemption
2 when a state law actually conflicts with federal law or when it stands as an obstacle
3 to the objectives of Congress in enacting the federal law. *See Cipollone*, 505 U.S.
4 at 545. Implied preemption exists when federal law so thoroughly occupies a
5 legislative field "as to make reasonable the inference that Congress left no room
6 for the States to supplement it." *Cipollone*, 505 U.S. at 516.

7       32. In *Montalvo v. Spirit Airlines*, the Ninth Circuit held that pervasive
8 "regulations enacted by the [FAA], read in conjunction with the [Federal Aviation
9 Act], sufficiently demonstrate an intent to occupy exclusively the entire field of
10 aviation safety." 508 F.3d 464, 471 (9th Cir. 2007); *see also* 49 U.S.C. § 40103, *et
11 seq*. The court further held that preemption of state law claims pertaining to
12 aviation safety was warranted to ensure that there existed "a single, uniform system
13 for regulating aviation safety" and to prevent a "crazyquilt" patchwork of varying
14 obligations. *Montalvo*, 508 F.3d at 471; *accord Abdullah v. American Airlines,
15 Inc.*, 181 F.3d 363, 367 (3d Cir. 1999); *see also Martin ex rel. Heckman v. Midwest
16 Exp. Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009) (holding that state laws
17 implicating the field of aviation safety are preempted to the extent that the FAA
18 and/or Congress has issued "pervasive" federal regulations or requirements).

19       33. As noted above, the 868-page ATC Manual includes comprehensive
20 requirements that air traffic controllers must follow under federal law. *See* 14
21 C.F.R. § 65.45. In addition, under federal law, "[t]he United States Government
22 has exclusive sovereignty of airspace of the United States", and the FAA has the
23 exclusive right to prescribe air traffic regulations and requirements "to ensure the
24 safety of aircraft and the efficient use of airspace." *See* 49 U.S.C. § 40103(a), (b).

25       34. Given the pervasive nature of the federal requirements included in the
26 ATC Manual and because these rules directly concern aviation safety, plaintiffs'
27 common law claims against Serco are subject to field preemption. *See Montalvo*,
28 508 F.3d at 471. To permit state law standards of care to be imposed on air traffic

controllers would inevitably lead to a "crazyquilt" of inconsistent regulations, which would defeat the interest of Congress in ensuring uniformity in the regulation of air safety. *See Montalvo*, 508 F.3d at 471; *see also* 49 U.S.C. § 40103(a), (b). Subjecting controllers to inconsistent state and federal standards would undoubtedly lead to confusion regarding the standard of care and the rules and requirements applicable to air traffic controllers. In a field where quick decision-making is essential and second-guessing can lead to accidents, a uniform standard is necessary to ensure the safety of the airspace in the United States.

35. In addition, because the common law duty plaintiffs seek to impose on Serco and Bloomer is inconsistent with the requirements included in the ATC Manual, plaintiffs common law claims against Serco are subject to conflict preemption. Accordingly, Serco has a colorable federal preemption defense.

## CONCLUSION

In light of the foregoing, because each of the elements under the Section 1442(a)(1) standard are satisfied, this Court has original jurisdiction over this action pursuant to 28 U.S.C. Sections 1442(a)(1) and 1446.

WHEREFORE, Serco prays that the above-entitled action now pending in the Superior Court of California for the County of Riverside be removed to this Court pursuant to 28 U.S.C. Sections 1442(a)(1) and 1446.

DATED: January 24, 2019

CLYDE & CO US LLP

By: /s/ Kevin R. Sutherland
KEVIN R. SUTHERLAND
CHRISTIAN T. JOHNSON
Attorneys for Defendant
SERCO INC.

## PROOF OF SERVICE

I am a employed in the County of San Francisco, State of California, I am over the age of eighteen years, and not a party to the within action. My business address is 101 Second Street, 24th Floor, San Francisco, California 94105.

On January 24, 2019, I served the document(s) described as:

**NOTICE OF REMOVAL OF SERCO INC.
TO UNITED STATES DISTRICT COURT**

on the parties in this action addressed as follows:

SEE ATTACHED SERVICE LIST

☐ **(BY FAX):** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☒ **(BY MAIL):** as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **(BY OVERNIGHT DELIVERY):** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

☐ **(BY PERSONAL SERVICE):** I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☒ **(BY CM/ECF):** by electronic filing system with the clerk of the Court which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have filed a Notice of Consent to Electronic Service in this action:

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.

Executed on January 24, 2019, at San Francisco, California.

_____
Sonja L. Gray

# SERVICE LIST

Louis J. Cutrone, Esq.
Cutrone & Associates
15260 Ventura Blvd., Suite 670
Sherman Oaks, California 91403
Tel: (818) 344-1737
Fax: (818) 921-7720

Attorneys for Plaintiff

James I. Michaelis
Michaelis Montanari & Johnson
4333 Park Terrace Drive, Suite 110
Westlake Village, CA 91361
Tel: (818) 865-0444
Fax: (818) 865-8444

Attorneys for Defendants
Estate of Nouri D. Hijazi and Richard Pierce
as Trustee of The Hajazi Living Trust

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

4638538
-2-
SERCO'S NOTICE OF FILING OF NOTICE OF
REMOVAL TO THE UNITED STATES DISTRICT COURT